# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KENDLE S. SCHEFFLER,**

     **Plaintiff,**          **CIVIL ACTION NO. 07-11411**

  **vs.**                    **DISTRICT JUDGE AVERN COHN**

                           **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as Plaintiff failed to exhaust her administrative remedies and there was substantial evidence on the record that Plaintiff remained capable of performing a significant number of jobs in the economy.

\*\*\*

Plaintiff filed an application for Disability and Disability Insurance Benefits and an application for Supplemental Security Income with a protective filing date of January 28, 2004, alleging that she had been disabled and unable to work since November 12, 2002 as a result of an injury to her left elbow, bi-polar disorder and severe manic depression. (TR 62-66, 74, 94-95, 554). The Social Security Administration denied benefits. (TR 28, 557). A requested *de novo* hearing was held on August 24, 2005 before Administrative Law Judge (ALJ) John W. Belcher. (TR 14, 26, 562). A supplemental hearing was held on March 22, 2006. (TR 610). The ALJ subsequently found that the claimant was not entitled to a period of disability, Disability Insurance Benefits or Supplemental Security Income because she was not under a disability at any time through the date

of the ALJ's October 26, 2006 decision. (TR 26). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5). The parties filed Motions for Summary Judgment. The issue Plaintiff raises for review is whether the ALJ's decision should be reversed or remanded based on the ALJ's allegedly biased conduct at the hearing. This Court's review is limited to determining whether Defendant's denial of benefits was supported by substantial evidence on the record. An examination of the record indicates that Plaintiff's claim of bias is not properly before the Court and, in any event, there is substantial evidence in the record to support the Commissioner's denial of benefits.

Plaintiff was forty years old at the time of the administrative hearing. (TR 566). Plaintiff has a high school education, less than two years of college education and a certificate as a nursing assistant. (TR 568-69). Plaintiff worked in the past as a teacher's aid and child care provider. (TR 75, 84). Plaintiff lives with her husband and daughter. (TR 567). Plaintiff stopped working as a result of an injury to her left elbow, bipolar disorder and severe manic depression. (TR 75).

Plaintiff testified that when she is in the depression stage of her bipolar disorder she has suicidal thoughts, sleeps a lot, goes into "crying stages," does not feel good about herself and sits around and does nothing. (TR 580). She has problems with concentration and she "can't think." (TR 580). When she is in the manic stage, she is restless, cannot concentrate or focus, wants to go on wild spending sprees, gets into angry rages, and she wants to argue with her husband and others. (TR 580-81). She testifies that she calms down after these blow ups. (TR 581). Plaintiff testified that as a result of her bipolar disorder, she has "no will to want to do anything." (TR 582). Plaintiff testified that although she was diagnosed with bipolar disorder only a couple of years before, she was told she had it all of her life and it seems to be getting worse. (TR 582, 584). Plaintiff has had

the "rages" twice a month for the past five or six years. (TR 583). She states that she used to have them "all the time" before she was prescribed medicine. (TR 583). Plaintiff testified that she has sleep apnea, uses a C-PAP machine and does not sleep through the night. (TR 111, 594). She reported trouble with her memory and concentration. (TR 116).

Plaintiff also testified that she has back pain and she cannot sit very long. (TR 586). During the day she sits in a reclining chair and watches television and knits. (TR 111). She alternates between sitting and reclining when she is uncomfortable and lies down once a day for approximately two hours to relieve the pressure on her back. (TR 587). She testified that she can stand for approximately ten or fifteen minutes before her back bothers her and she shifts "back and forth" on her legs, eventually sitting down. (TR 588). She testified that she can walk approximately 100 yards before her back and legs start to cramp. (TR 588). However, Plaintiff reported on February 29, 2004 that she can only walk one hundred feet before she has to stop and rest. (TR 116). Plaintiff uses a motorized scooter when shopping. (TR 113, 588). The ALJ questioned Plaintiff about where she walks, if she cannot walk in a store and Plaintiff testified that she does not walk because it hurts her back too much. (TR 589). Plaintiff reports that she can drive and takes her daughter to bowl once a week. (TR 113, 114).

Plaintiff testified that her diabetes makes her shaky, tired and thirsty. (TR 591). She takes Glucophage twice a day for her diabetes. (TR 591). She states that her daily blood sugar readings are usually between 128 and 158. (TR 591). Plaintiff also testified that she has problems with her left arm due to an injury she sustained at work and she cannot lift more than five pounds with it. (TR 593). She has dull pain in her elbow all the time and sometimes the pain gets "sharp" and she will drop a glass from her hand. (TR 593). In response to the ALJ's questioning, Plaintiff testified

3

that before the injury she could lift ten to fifteen pounds with her left hand. She testified that she can only lift ten pounds with her right hand. (TR 594). Plaintiff reported that she cannot do housework including laundry and vacuuming and cannot lift heavy items, like a casserole. (TR 111).

Plaintiff testified that the recommendations from an occupational therapist that Plaintiff engage in a home exercise program, massage therapy and stretching were not helpful and the stretching caused increased pain in her back. (TR 571). Plaintiff testified that she takes Motrin or Tylenol for her back and she also takes Geodon, Topamax, Synthroid, Glucophage, Zoloft and Ditropan. (TR 571). Plaintiff testified that she does not have any side effects from these medications. (TR 571). Plaintiff sees a therapist every other week and a psychiatrist once a month. (TR 571). Plaintiff testified that the visits were helping her control her bipolar disorder and the disorder was "not as bad as what it used to be." (TR 571-72). A medical expert, Robert W. Lansing, Ph.d, licensed clinical psychologist testified at the hearing. (TR 569). Dr. Lansing diagnosed Plaintiff with Category 12.04 affective disorders, including bipolar disorder and depression. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1. (TR 574). He testified that this disorder does not have more than a minimal impact on Plaintiff. (TR 574). For the B criteria, Dr. Lansing testified that Plaintiff has mild functional limitations in activities of daily living and maintaining concentration, persistence and pace, no functional limitations in maintaining social functioning, and no repeated episodes of decompensation, based on psychological evidence only. (TR 574). He testified that criteria C does not apply. (TR 574).

At the August 24, 2005 hearing the ALJ ordered an orthopedic examination and psychological testing, for example an MMPI, of Plaintiff, to be followed by a supplemental hearing

4

at which the vocational expert (VE) would testify. (TR 601). The supplemental hearing was held on March 22, 2006 and the VE testified. (TR 611).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2007, had not engaged in substantial gainful activity since November 12, 2002, the alleged onset date, and suffered from degenerative disc disease and degenerative arthritis of the lumbar spine, morbid obesity, and a bipolar/depressive disorder, all severe impairments, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 16-17). The ALJ also found that Plaintiff has the following non-severe conditions that have no more than a minimal effect on Plaintiff's ability to engage in work-related activities: diabetes mellitus, hypothyroidism, sleep apnea and vision problems. (TR 16). Additionally, the ALJ found Plaintiff's statements concerning the effects of her symptoms were not entirely credible, she could not perform her past relevant work and her non-exertional limitations did not allow her to perform the full range of light work, but concluded that she was capable of performing a significant number of jobs in the economy. (TR 25-26). Therefore she was not suffering from a disability under the Social Security Act. (TR 26).

**STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS:**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)  she was not presently engaged in substantial gainful employment; and

(2)  she suffered from a severe impairment; and

(3)  the impairment met or was medically equal to a "listed impairment;" or

(4)  she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from

6

doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

## *Plaintiff's Allegation of ALJ's Bias*

Plaintiff's only argument is that Plaintiff was denied the right to a fair and impartial hearing due to the ALJ's allegedly biased, inappropriate, outrageous and prejudicial conduct at the hearing. Plaintiff alleges that the ALJ did not "fully and fairly develop the administrative record." (Pl's Br. at 7). Plaintiff alleges that the ALJ had a "total fixation on Plaintiff's weight" and points to evidence in the hearing transcript of the ALJ's questions to Plaintiff about her weight, comments about his own weight loss, and opinions about losing weight as being biased, inappropriate, outrageous and prejudicial to Plaintiff's right to a fair and impartial hearing. (Pl's Br. at 6, docket no. 8).

"The Social Security Act gives those claiming disability benefits a right to a hearing in which witnesses may testify and evidence may be received." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). "Although the hearing is informal in nature, due process requires that any hearing afforded claimant be full and fair." *Id.*

7

The regulations provide that

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. . . . If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

20 C.F.R. §§ 404.940, 416.1440; *see also Ventura*, 55 F.3d at 902 ("The claimant must bring any objections to the attention of the ALJ and the ALJ shall decide whether to continue the hearing or withdraw.").

The regulations require that the issue of bias be raised at the "earliest opportunity." 20 C.F.R. §§ 404.940, 416.1440; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 495 (W.D.N.Y. 2004) (The *Pronti* parties alleged general bias and did not have all of the evidence necessary to raise the bias issue prior to the appeals council and district court reviews. Therefore, the court found that plaintiffs raised the issue at the earliest opportunity.). Plaintiff alleges bias relating to her own claim and the questioning and statements by the ALJ at Plaintiff's hearing. A review of the transcript shows that neither Plaintiff nor her attorney objected to the ALJ's actions during the first or second hearing. There is no evidence or allegation that Plaintiff raised the issue of bias prior to the second hearing or to the Appeals Council. Plaintiff's allegations of bias rely on no evidence outside of the August 25, 2005 hearing transcript, therefore the earliest opportunity for Plaintiff to object would have been during that hearing. The next opportunity would have been at a time prior to the supplemental hearing, thus allowing the ALJ an opportunity to withdraw before the supplemental hearing. For these reasons, the Court should find that Plaintiff failed to exhaust her administrative remedies with respect to this issue. Therefore, the Court is precluded from reviewing the issue of

the ALJ's bias.

*Substantial Evidence*

Plaintiff does not argue that the ALJ's decision is not supported by substantial evidence and a review of the record shows that the decision is supported by substantial evidence. The ALJ determined that Plaintiff had the RFC to perform a limited range of light exertion work. (TR 17). Plaintiff can lift and carry twenty pounds occasionally and less than ten pounds frequently with the upper right extremity and no more than five pounds with the upper left extremity with pushing and pulling restrictions consistent with these limitations. (TR 17). Plaintiff can stand and/or walk for six hours of an eight-hour work day and can sit for eight hours of an eight-hour work day with the ability to change positions every hour. (TR 17). Plaintiff cannot climb ladders, ropes or scaffolding and she cannot balance, crouch, kneel, crawl or walk on uneven ground. (TR 17). Plaintiff can occasionally climb stairs, bend or stoop. (TR 17). Plaintiff requires an air conditioned working environment and should avoid all hazardous conditions such as working with fast machinery or working at unprotected heights. (TR 17). Plaintiff can perform occasional power gripping, torquing or twisting with the left hand. (TR 17). Due to her mental impairments, she is limited to simple repetitive tasks with no intense interpersonal contact with co-workers, supervisors or the public. (TR 17).

The RFC is supported by substantial evidence. The RFC is consistent with the most restrictive exertional limitation in the record with regard to Plaintiff's left arm. Gregory Holzhei, D.O. examined Plaintiff on March 17, 2003 and concluded that Plaintiff would continue treatment of her elbow, her low back pain was "resolved," and she could return to work but was restricted to limited use of the left arm and could not lift in excess of five pounds with it. (TR 144, 145).

The RFC is also supported by a state agency Physical Residual Functional Capacity Assessment completed by William G. Thomas, M.D., who determined Plaintiff was limited to occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking about six hours in an eight-hour work day, sitting for a total of about six hours in an eight-hour work day and avoiding constant pushing and/or pulling (including operation of hand and/or foot controls) in the lower extremities. (TR 386). Plaintiff should never climb ladders, ropes and scaffolds and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl. (TR 387). Plaintiff should avoid concentrated exposure to extreme cold, vibrations and hazards, including machinery and heights. (TR 389).

An agency Psychiatric Review Technique dated June 1, 2004 notes that Plaintiff has a 12.04 affective disorder with moderate functional limitations in maintaining concentration, persistence or pace. (TR 411). No other limitations and no episodes of decompensation were noted. (TR 411). Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods. (TR 415). The review concluded that Plaintiff could perform unskilled work. (TR 419). The RFC is consistent with this evidence because it limits Plaintiff to simple repetitive tasks.

The ALJ properly referenced the regulations, Pt. 404, Subpt. P, App. 2, Rule 202.20 and 202.21, 20 C.F.R. §§ 404.1569 and 416.969 as a framework which would direct a conclusion of "not disabled" and further relied on the VE's testimony to determine what effect Plaintiff's non-exertional limitations would have on the number of jobs available in the economy. The ALJ's hypothetical to the VE contained the limitations in the RFC and additional limitations to simple

repetitive tasks with no transferability of skills and no jobs involving safety operations, the safety of others or requiring hyper-vigilance. (TR 618-19). The VE testified that Plaintiff would not be able to do her past relevant work, but there would be a reduced range of jobs available including general office clerk, inspection and food preparation positions available[1]. (TR 619). The ALJ's finding that there are significant jobs in the economy that Plaintiff can perform is supported by substantial evidence.

### *Plaintiff's Credibility*

Plaintiff also did not challenge the ALJ's credibility determination; however, it is worth noting that this determination is supported by substantial evidence. The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because the ALJ has the opportunity to observe the demeanor of a witness. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1234 (6th Cir. 1993). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location,

---

[1]General office clerk positions would be reduced by ten percent to 5,000 jobs regionally and 50,000 jobs nationally, inspection positions would be reduced by fifty percent to 3,300 jobs regionally and 70,000 nationally and food preparation positions would be reduced by ten percent to 2,600 jobs regionally and 70,000 nationally. (TR 619).

11

duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In weighing Plaintiff's credibility and her subjective complaints and the effects of Plaintiff's alleged symptoms, the ALJ considered Plaintiff's daily activities which included crocheting, reading, and cooking. (TR 24). The ALJ also noted that Plaintiff babysat for an extended period (24 hours), traveled out of state by bus on her own and sought home assembly work through a catalogue. (TR 24, 535-37). He addressed the effectiveness of medication and a CPAP machine to control her diabetes, hypothyroidism and sleep apnea and the lack of objective evidence supporting Plaintiff's claims of severe eye impairments and chronic migraine headaches. (TR 24). The ALJ cited extensively to objective medical evidence in the record, including physical and neurological examinations, x-rays and EMG and MRI testing which revealed normal findings. The ALJ also considered and explained the weight he gave to information provided by Plaintiff's friend. (TR 22, 25).

The ALJ considered and cited extensively to records regarding treatment for Plaintiff's mental impairments, including treatment by physicians, psychologists, a therapist and a social worker. (TR 21-22). The ALJ explained the weight he gave to these records, noted inconsistencies in the record where they existed, and noted Plaintiff's responsiveness to medication and precipitating factors, for example, Plaintiff's repeated mention of her financial problems and their associated stress. (TR 21-23). Finally, the ALJ determined at the first hearing that he needed additional

12

information, ordered an orthopedic exam and additional psychological testing and followed up with a supplemental hearing at which the vocational expert testified. (TR 601-02). In view of the evidence the ALJ could reasonably conclude that Plaintiff's subjective complaints were not entirely credible. The ALJ's determination of Plaintiff's credibility is supported by substantial evidence.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 17, 2008                           s/ Mona K. Majzoub
                                                MONA K. MAJZOUB
                                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: March 17, 2008                           s/ Lisa C. Bartlett
                                                Courtroom Deputy